The Commercial Forgings Co. v. Commissioner.
Commercial Forgings Co. v. Commissioner
Docket No. 4034.
United States Tax Court
1945 Tax Ct. Memo LEXIS 235; 4 T.C.M. (CCH) 425; T.C.M. (RIA) 45131; April 16, 1945
*235 Held, respondent's determination of reasonableness of salaries approved. Cecil H. Haas, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined deficiencies for the year 1941, as follows: Income tax
$14,412.66
Declared value excess profits tax
5,396.98
Excess profits tax
47,485.02
The only issue is the reasonableness of salaries paid to two officers and three employees. [The Facts] Petitioner is an Ohio corporation organized in 1919 with its principal office and plant located in Cleveland, Ohio. It is engaged in the business of producing flat die forgings. It specialized in hollow boring, trepanning and flame hardening of forgings, processes which are not common in the forging plants. Flame hardening is a patented process as to which petitioner has a license. In the taxable year 31.9 per cent of petitioner's sales involved these specialized processes. The petitioner is a small company, although in comparison with others in its field, it is one of the larger. In 1941 it employed 73 persons and, according to its balance sheet, the total value of its buildings, machinery and equipment *236 amounted to $50,080.26. Most of its machinery had been acquired second-hand. It has always occupied the same plant. Pertinent statistical data as to sales, salaries, profits, and other features appear in the following tables: Net Income
Before Officers'
Officers'
Wages
Gross
Salaries
Net
Year
Gross Sales
Salaries
Other
Profit
and Taxes
Income
1936
$ 262,422
$ 29,000
$ 62,875
$ 46,152
$ 46,112
$ 17,112
1937
358,586
30,991
89,963
90,562
49,405
18,414
1938
171,153
26,400
46,706
43,868
22,183
(4,217)
1939
281,360
28,977
79,033
74,882
39,208
10,231
1940
464,755
50,479
133,742
142,915
98,793
48,314
1941
1,027,088
126,599
281,640
391,709
308,997
182,398
Earn
Federal
Capital
Surplus end
Dividends
Number
Year
Taxes
Stock
of Year
Paid
Employees
Assets
1936
$ 4,668
$39,500
$ (43,880)
38
$83,726
1937
4,170
40,500
3,295
$3,230
50
91,250
1938
$40,500
( 1,500)
33
89,173
1939
1,357
52,100
4,768
2,605
37
135,197
1940
17,324
62,400
32,661
3,120
48
232,083
1941
107,680
62,400
103,657
3,120
73
362,561
*237 During the taxable year petitioner had no direct war contracts but the volume of its business reflected the impact of the war. It had a large number of customers. During 1941 petitioner's stock was owned as follows: Name
Shares
Percent
W. Illingworth
395
63.30
Rae Illingworth
41
6.70
O. F. Elber
186
29.80
F. Elber
1
.10
R. H. Jones
1
.10
Total
624
100.  The capital stock of petitioner corporation was increased in 1940 from 521 shares to 624 shares of the par value of $100 for the purpose of increasing its working capital by $10,300. The stock increase was subscribed for by the stockholders. The directors were the same persons as the stockholders. Rae Illingworth is the wife of W. Illingworth, the president, and F. Elber is the wife if O. F. Elber, the secretary-treasurer of the company. R. H. Jones, now deceased, was a nephew of Mrs. Illingworth and was production manager. In its income tax return for 1941 the petitioner took a deduction for compensation of officers and three key employees in the aggregate amount of $210,599.46. The amounts claimed and the amounts allowed by the respondent were as follows: Amount
Officer
Claimed
Allowed
W. Illingworth, President
$ 67,799.73
$33,000
O. F. Elber, Sec'y.-Treas.
58,799.73
30,000
$126,599.46
$63,000
Amount
Employee
Claimed
Allowed
I. L. Pickett
$28,000
$15,000
R. J. Wilhelms
28,000
15,000
R. Jones
28,000
15,000
$84,000
$45,000
*238 Salaries paid to the same officers and employees for the years 1936 to 1941 were as follows: Year
Illingworth
Elber
Pickett
Wilhelms
Jones
1936
$22,016.71
$20,816.71
$ 3,608.36
$ 3,308.36
$ 3,308.36
1937
16,695.75
14,295.75
5,427.52
5,127.52
5,127.52
1938
14,400.00
12,000.00
2,695.94
2,395.94
2,395.94
1939
15,688.49
13,288.49
6,587.65
6,512.65
6,512.65
1940
26,439.31
24,039.31
12,000.00
12,000.00
12,000.00
1941
67,799.73
58,799.73
28,000.00
28,000.00
28,000.00
The minutes of the annual meeting of the directors of the petitioner corporation for January 6, 1941 contain the following: "A meeting of the Directors of the said company was held at the offices of the Company. Each and every one of the five directors of the Company was present, in person. W. Illingworth, President, presided. "The minutes of the previous year's meetings were submitted and it was moved by Fannie Elber and seconded by Raymond Jones that they be accepted as submitted. "The Treasurer presented to the meeting a general report of the activities and financial condition of the Company to the present date. "The Board considered the matter *239 of annual salaries for the officers during the year 1941. "It was moved by Raymond Jones, seconded by Fannie Elber, that W. Illingworth be paid for services as President and General manager during the year 1941 the sum of $45,000.00 plus a bonus of an amount equal to 10% of the net profit earned by the Company during the year 1941; said bonus to be paid at the end of the year, to be computed prior to non-deductible Federal Income Taxes; that the officers of the Company be authorized to execute with the President-General Manager a contract binding the Company to pay the above sums in return for the services of the President, General Manager. Remarks were called for. None were forthcoming. Upon a vote being taken, it resulted as follows: For the Motion - five votes. Against the motion - None. The motion was declared carried. "It was moved by W. Illingworth, seconded by Rae Illingworth, that O. F. Elber be paid for services as Treasurer and Sales-Manager during the year 1941 the sum of $36,000.00 plus a bonus of an amount equal to 10% of the net profit earned by the Company during the year 1941; said bonus to be paid at the end of the year and to be computed prior to non-deductible *240 Federal Income Taxes; that the officers of the Company be authorized to execute with the Treasurer-Sales-Manager a contract binding the Company to pay the above sums in return for the services of the Treasurer, Sales-Manager. Remarks were called for. None were forthcoming. Upon a vote being taken, it resulted as follows: For the motion - Five votes. Against the motion - None. The motion was declared carried. "There being no further business to transact, the meeting was adjourned." There is no evidence that any contracts binding the company to pay the salaries and bonuses agreed upon were ever entered into. Similar resolutions appear on the books for previous years. W. Illingworth testified that he did not think that his wife and Mrs. Elber, who were directors, attended the meeting of January 6, 1941, although it is so stated in the minutes and their names appear as movers of motions authorizing salaries and bonuses and their signatures appear at the end of the minutes. The witness could recall no discussion concerning the fixing of the salary of either himself or Elber. In answer to the question as to how the amounts of the salaries paid to the three employees were fixed, Illingworth *241 stated that "they were just drawn out of the air, we might say." Petitioner's president stated that in 1930 petitioner had an established policy reference salaries and bonuses to the effect that "when there was work and money, why we would get paid; when there wasn't any work or money, we wouldn't get paid; we would have to ride along, rise and fall with the earnings and production of the company." Since 1929 petitioner was frequently in financial distress and unable to pay substantial salaries. About 1935 or 1936 a bonus plan was inaugurated with respect to the three key employees under which they would receive 5 per cent of gross profits in addition to a fixed salary. The bonus policy was later enlarged to include all employees, whether in the plant or in the office. There was no corporate action taken by petitioner adopting or putting into effect such a policy and no binding agreement was executed between petitioner and any other persons whose salaries are here in controversy. It has always been petitioner's policy to pay dividends of $5 per share regardless of its earnings except if no profits were earned no dividends were paid. In 1941 when its net income was $182,397.89 *242 petitioner paid dividends of $5 per share, aggregating $3,120. During the taxable year W. Illingworth was president and general manager of the petitioner. He attended to "all details of the processing of the work through the shop, any of the new devices or new production means." He talked such things over with Jones, who was generally responsible for production. Coming to this country from England at 20 years of age, Illingworth worked as a blacksmith for two years and for a forging company 14 years, where he became general superintendent of the plant. In 1919 he, with Elber and two others, organized the petitioner company, with a total investment of $8,000 and total employees of five men. O. F. Elber was secretary and treasurer of the company and took care of the outside sales. He and Pickett were the only salesmen. He was out of town part of each week and was, in 1941, about 45 years of age. R. H. Jones, now deceased, handled all the production orders through the shop, handled the men, and was generally responsible for the output. Since his death his place has been taken by one Hubert Oliver, 26 or 28 years old, who had no previous experience in forgings and whom petitioner *243 is training and paying a salary of $250 per month. I. L. Pickett handles the inside sales "receives the inquiries, makes out the quotations and ansewers the telephone inquiries, quotes over the telephone and takes care of the incoming orders." R. J. Wilhelms had charge of the office and had supervision of three girls. He has been with the petitioner 15 years. All of the officers and employees in question worked long hours and sometimes seven days a week. In this proceeding the burden of proof is on petitioner to prove both the unreasonableness of the salaries allowed by the respondent and the reasonableness of the salaries claimed. ; . On careful consideration of the evidence, which is fairly summarized above, we are of the opinion that petitioner has failed to demonstrate and prove either proposition. We are unable to conclude that respondent's allowance of salaries was not commensurate with the several duties performed nor was it disproportionate to the size and nature of petitioner company. There is little doubt that the petitioner's officers and certain of the *244 employees had grown in usefulness to the company but there is little, if any, evidence of any unusual or special contribution during the taxable year. Assuming the existence of a policy of the company to pay low salaries in poor years and higher salaries in good years, the record shows that respondent has, in effect, applied that policy to the taxable year. If any observation were made as to the salaries fixed by the Commissioner, it would be that under the facts they appear reasonable, if not liberal. Salaries of $33,000 and $30,000 are certainly not insubstantial. By the same token, the evidence does not justify the higher salaries and bonuses claimed. They were clearly unreasonable. It is unnecessary in the premises to discuss the matter of stockholding and the relation of salaries and dividends paid. If further support were needed for our conclusion, there is ample basis here. We affirm the Commissioner. Decision will be entered for the respondent.